UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| - v. - | : |
| | 07 Cr. 1009 (VM) |
| WILLIAM IRRIZARY, | : |
| Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**

MICHAEL J. GARCIA
*United States Attorney for the*
*Southern District of New York*
*Attorney for the United States*
*of America*

JOHN P. CRONAN
Assistant United States Attorney,
*Of Counsel*

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*

*One Saint Andrew's Plaza*
*New York, New York  10007*

September 2, 2008

**By Facsimile**

The Honorable Victor Marrero
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 660
New York, New York 10007

        Re:    United States v. William Irrizary
                  07 Cr. 1009 (VM)

Dear Judge Marrero:

      The Government respectfully submits this letter in advance of the defendant's sentencing, which is scheduled for Friday, September 5, 2008, at 1:30 p.m.  For reasons set forth below, the Government respectfully submits that a sentence in this case within the advisory United States Sentencing Guidelines range of 12 to 18 months would be sufficient, but not greater than necessary, to comply with the purposes of sentencing.

**I.  Background**

**A.**      **The Offense Conduct**

      On the night of October 5, 2007, the defendant approached his ex-girlfriend, Carmen Santana, as she was returning home from work.  Upset that they had recently broken up, the defendant confronted Ms. Santana in the lobby of her apartment building in the Bronx with a gun.  The defendant placed the gun against Ms. Santana's stomach, said that he wanted to talk with her, and threatened to kill her if she refused to speak with him.  Ms. Santana told the defendant that if he was going to kill her, not to do it in the building where her kids were.  After a verbal exchange, the defendant left, and Ms. Santana went to her apartment by herself.  *See* Presentence Investigation Report ("PSR") at ¶ 5.

      Later that evening, Ms. Santana went out to buy some groceries, and the defendant once again confronted and threatened her.  Upon returning to her apartment, Ms. Santana called

The Honorable Victor Marrero
September 2, 2008

911 and provided the 911 operator with a description of the defendant and his vehicle. New York City Police Department officers soon responded to Ms. Santana's apartment, where she reported that the defendant had menaced her with a gun earlier that night. See PSR ¶ 6.

The defendant was soon arrested by officers of the New York City Police Department. At the precinct, while removing his shoelaces, the defendant broke down crying, said that he was sorry, and announced that his gun was in his brother's bedroom. Officers proceeded to the defendant's residence, where the defendant's mother gave consent to search the apartment and the defendant's brother gave consent to search his room. In the brother's room, the officers recovered a gun from under the night stand, which was the very location where the defendant said gun would be. See PSR ¶¶ 7–9.

The firearm that was recovered was a .38 caliber Smith and Wesson revolver. Ms. Santana was shown this firearm and recognized it as the one that the defendant put against her stomach and used to threaten her a short time earlier. See PSR ¶ 10.

At approximately 9:30 a.m. on or about October 6, 2007, the defendant was advised of his *Miranda* rights, waived those rights, and stated, in sum and substance, that he purchased the firearm for $350 from an individual at the corner of 125th Street and Lexington Avenue and that he intended to sell the gun for $450. See PSR ¶ 11.

Prior to possessing the firearm on May 2, 2008, the defendant was convicted of a felony. Specifically, on or about April 28, 1992, the defendant was convicted in New York Supreme Court, New York County, of attempted robbery in the second degree, in violation of New York Penal Law 160.10, a Class D felony. See PSR ¶¶ 13, 51–52.

B.   The Charges Against the Defendant

On October 17, 2007, the defendant was charged in a criminal complaint with one count of possessing a firearm subsequent to a felony conviction, in violation of Title 18, United States Code, Section 922(g)(1). On October 31, 2007, a federal grand jury charged the defendant in Indictment 07 Cr. 1009, with the same offense of being a felon in possession of a firearm.

C.   The Defendant's Guilty Plea

On May 2, 2008, the defendant pleaded guilty before Your Honor. During the defendant's plea allocution, he admitted, "I had a firearm. I know it was illegal and I feel very sorry. On October 6, 2007. In the Bronx. And I had a felony conviction prior to that." Transcript, May 2, 2008, at 13.

On April 22, 2008, prior to the defendant's guilty plea, the Government sent a letter to defense counsel, pursuant to the suggestion of the Second Circuit in *United States* v.

The Honorable Victor Marrero
September 2, 2008

*Pimentel*, 932 F.2d 1029, 1034 (2d Cir. 1991). The Government's *Pimentel* letter calculated a base offense level of 14 pursuant to U.S.S.G. § 2K2.1(a)(6), because the defendant was prohibited from possessing a firearm at the time of the offense, and a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). The *Pimentel* letter also contemplated three criminal history points, yielding a Criminal History Category of II. Based on an offense level of 12 and a Criminal History Category of II, the resulting advisory Guidelines range is 12 to 18 months' imprisonment.

D.  **The Probation Department's Recommended Sentence**

In the PSR, the Probation Department likewise calculated a Guidelines range of 12 to 18 months' imprisonment, which range reflects a offense level of 12 and a Criminal History Category of II. *See* PSR at 20. The Probation Department recommended a sentence at the top of that range of 18 months' imprisonment, to be followed by a three-year term of supervised release.

The Probation Department provided the following explanation for its recommendation of a sentence at the top of the advisory Guidelines range:

> Pursuant to the sentencing factors of 18 U.S.C. 3553(a), including just punishment and the need to protect the public from Irizarry's future crimes, we believe that a sentence at the top of the advisory Guidelines range of imprisonment is warranted.

PSR at 21. The Probation Department also discussed the defendant's long criminal history, much of which was not counted under the Guidelines in arriving at his Criminal History Category of II:

> [In addition to his prior felony conviction,] Irizarry also has a total of 16 misdemeanor convictions, many of which are related to his possession of personal-use quantities of controlled substances, or petty thefts. As the defendant commenced his criminal history at the age of 18, only 3 of the 16 misdemeanor convictions were assigned any criminal history points.

PSR at 20.

## II. Argument

The United States Sentencing Guidelines (the "Guidelines") still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005) and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer mandatory, it held also that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. As the Supreme

The Honorable Victor Marrero
September 2, 2008

Court recently stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark." *Gall* v. *United States*, 128 S. Ct. 586, 596 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); "the kinds of sentences available," *id.* § 3553(a)(3); the Guidelines range itself, *see id.* § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *see id.* § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7). *See Gall* v. *United States*, 128 S. Ct. at 596 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)   to afford adequate deterrence to criminal conduct;

(C)   to protect the public from further crimes of the defendant; and

(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 128 S. Ct. at 596 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 127 S. Ct. 2456, 2463 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 128 S. Ct. at 594; *see also Rita* v. *United States*, 127 S. Ct. at 2464. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 128 S. Ct. at 597.

-4-

The Honorable Victor Marrero
September 2, 2008

In the present case, a sentence within the advisory Guidelines range of 12 to 18 months' imprisonment would be sufficient, but not greater than necessary, to comply with the purposes of sentencing. From a categorical perspective, the Guidelines range that applies in this case reflects the considered judgment of the Sentencing Commission, after examining "tens of thousands of sentences and work[ing] with the help of many others in the law enforcement community over a long period of time" in an effort to fulfill the same objectives set out in Section 3553(a). *Rita*, 127 S. Ct. at 2464. The Guidelines "seek to embody the § 3553(a) considerations, both in principle and in practice," and accordingly, the guidelines "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Id.*

From an individual perspective, a sentence within the range of 12 to 18 months' imprisonment is appropriate in this case. Particularly relevant in this case are the "nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A). The defendant possessed a very dangerous firearm and used that weapon to threaten the life of her former girlfriend, Carmen Santana. He approached Ms. Santana as she was returning home from work, placed the firearm against her stomach, and threatened to shoot her if she refused to talk about their relationship. A short time later that night, the defendant again confronted Ms. Santana and demanded to speak with her. Quite understandably, Ms. Santana was terrified and contacted the police. Indeed, about ten years earlier, the defendant was convicted of attempted assault, after he caused personal injury to Ms. Santana back in July 1997. *See* PSR ¶ 59.

With respect to the need for the sentence "to promote respect for the law," 18 U.S.C. § 3553(a)(2), and "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), this defendant's long history of criminal convictions reflects a complete disregard for the law. Although only 39 years, old, the defendant has amassed at least 17 convictions since 1988, for offenses of varying degrees of seriousness. *See* PSR ¶¶ 31–65. While some are relatively minor offenses (such as turnstile jumping), others are extremely troubling. The defendant has seven convictions involving some form of possession of controlled substances, a conviction for assault, and a conviction for attempted robbery.

A closer look at the circumstances that gave rise to these prior convictions, as reported in the PSR, reveals the degree of the defendant's disregard for the law. On July 20, 1997, the defendant was convicted of attempted assault in the third degree, in Bronx Criminal Court. The Probation Department reports that this offense involved an assault of Carmen Santana, the same person that the defendant threatened with a gun in this case:

> According to the NYPD arrest report, on July 19, 1997, at 8:30 p.m., at 3484 Corsa Avenue, in the Bronx, NY, William Irizarry caused personal injury to the complainant, Carmen Santana, who found a box of bullets in their residence. When police officers searched the

-5-

The Honorable Victor Marrero
September 2, 2008

apartment, they located a handgun in a child's bedroom.

PSR ¶ 59.

The defendant criminal history includes other instances of violence, including the use of weapons. Perhaps most serious was the conduct that gave rise to the defendant's prior felony conviction for attempted robbery in the second degree. According to information obtained by the Probation Department, on August 18, 1991, the defendant stabbed his victim in the side with a five-inch folding knife, and then used that knife to slit the victim's pants and remove $40. *See* PSR ¶ 51.

Additionally, the Probation Department reports that, when the defendant was arrested on May 19, 1988 for possessing a controlled substance, he resisted arrest by pulling a knife from his pocket and pushing the arresting officer. *See* PSR ¶ 38. The defendant was arrested on August 17, 1989 for petit larceny, after he punched his victim and removed property from the victim. *See id.* ¶ 40. On October 15, 1990, the defendant forcibly stole bus vouchers from a New York City bus driver. *See id.* ¶ 46. On January 14, 1991, the defendant put his arm throw the window of a bus to steal a book of transfer coupons. *See id.* ¶ 48.

Finally, a prison term within the range of 12 to 18 months' imprisonment would achieve the need for the sentence "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). Given the defendant's lengthy criminal history, which involves a wide range of offenses, it is clear that the defendant's prior custodial and probationary terms have not acted as a deterrent to criminal conduct.

The Honorable Victor Marrero
September 2, 2008

### III.  Conclusion

  For the reasons set forth above, the Court should impose a sentence within the advisory Guidelines range of 12 to 18 months' imprisonment.

               Respectfully submitted,

               MICHAEL J. GARCIA
               United States Attorney


          By: /s/ John P. Cronan
             John P. Cronan
             Assistant United States Attorney
             Tel.: (212) 637-2779
             Fax:  (212) 637-2390

cc: Peggy M. Cross, Esq.
   *By facsimile*